## John and Paull *versus* Rush et al.

In the case of a sale of *unseated* land by the commissioners, if the purchaser fail to comply for several years, and before payment is tendered by him the owner of the land pays to the commissioners the taxes and costs and receives from them a deed for the land, the vendee of the owner may recover the possession from the purchaser.

ERROR to the Common Pleas of *Fayette county.*

This case was argued in 1849. It was an ejectment, brought on the 1st March, 1847, for 400 acres of land, by James Rush et al., heirs of Samuel Rush, deceased, *vs.* Samuel John, for 400 acres of land, and Joseph Paull was admitted as co-defendant, as landlord of Samuel John. The plaintiffs claimed as heirs at law of Samuel Rush, deceased, and claimed under warrant to William Tinsley, survey and conveyances. It appeared from the evidence that the land was warranted to William Tinsley, and that he, by deed dated in October, 1788, conveyed to Henry Keys the undivided half part of the 400 acres 38 perches. At the death of Henry Keys, in 1815, his children were entitled to this half. His children, Isabella and Russell Keys, conveyed to Samuel Keys, by deed dated 2d September, 1836, and Samuel Keys conveyed to *Samuel Rush,* the father of plaintiff, by deed dated May 17, 1842. On part of plaintiffs was given in evidence, deed from commissioners to Russell Keys, hereinafter referred to.

On the part of defendants it was alleged, that the tract of land was assessed in the name of William Tinsley, the warrantee, and was sold for taxes by the treasurer of Fayette county to the commissioners, and conveyed to them by deed dated 14th August, 1826. The commissioners held the land for some years, and not being redeemed, they sold it at public auction, on 13th June, 1832, to *James Paull* & Sons, for $10.40, and on the          day of          1832, they acknowledged a deed-poll to said Paull & Sons, for 399 acres of land, which was admitted to be the same land. This sale by the commissioners, and deed, being in 1832, was

[John and Paull *v.* Rush et al.]

years *before* the conveyance to Samuel Keys, which was in 1836, and also before the conveyance by *Keys to Rush*, which was in 1842.

Whether *James Paull* lifted this deed or not, or whether he paid the amount of his bid, did not appear on the trial, and it was stated in the paper-book, "could not be made to appear." In 1842, however, the executor of the will of James Paull and the devisee of this property, tendered to the treasurer of Fayette county $18, for the Tinsley tract. This tender was made, probably, in 1842 or 1843.

The plaintiffs gave in evidence a deed for the land *from the commissioners of Fayette county* to Russell Keys, dated 3d May, 1836, with treasurer's receipt to Samuel Keys for Russell Keys, per James Piper, Esq., dated May 3d, 1836, for taxes, interest, and costs.

The defendants, *inter alia*, offered to read in evidence from the commissioner's book of sales, with *treasurer's* receipts, &c., the following memorandum:

"Received of Samuel Keys, per James Piper, Esq., seventeen dollars and seventy-three cents, in full on the Tinsley William tract, to the year 1835. May 3d, 1836.

"Wm. Crawford, *Treasurer of Fayette county.*"

To this evidence the plaintiffs objected, and the court sustained the objection, and the defendants excepted.

The court, Gilmore J., charged the jury that if they believed that Samuel Keys, on the 3d May, 1836, paid to the commissioners the sum of $17.73, the taxes and costs of the former sale, and the taxes which had accumulated while they held the lands, and the payment was made before Col. Paull paid into the treasury of the county the amount for which he had purchased the land from the commissioners, on the 13th June, 1832, and before any deed was delivered to him by the commissioners, that *the plaintiffs* were entitled to recover the undivided moiety of this land to which they had shown title.

Defendants' counsel excepted to the charge. Verdict was rendered for plaintiffs, for 202 acres and 30 perches; and as to residue, for defendants.

Error was assigned to the rejection of the evidence above referred to, and to the charge.

The case was argued by *Veech* and *Howell*, with whom was *Dawson*, for plaintiffs in error.—It was contended, that when the property was struck down to Paull & Sons, by the commissioners, an interest was vested in them, which the commissioners could not by any subsequent act impair: Dickey's case, 1 *Jour. Juris.* ; 7 *Watts* 437; 5 *Ser. & R.* 161; 3 *Whar. Rep.* 21–25; 15 *Wend.* 545; 13 *Pickering* 69.

[Johns and Paull *v.* Rush et al.]

*Deford* and *Miller*, for defendants in error, plaintiffs below.

The opinion of the court was delivered, Oct. 28th, by

BURNSIDE, J.—The evidence offered in the first assignment of error was immaterial. Its rejection did the plaintiff no injury. All the taxes due and owing on the Tinsley survey had been paid to and received by the county, many years before the Paulls made any attempt to perfect their title and pay their bid. In 1836, the original owner, Russell Keys, paid all the taxes and costs due to the county, and obtained a deed from the commissioners. The paper-book shows, and the evidence is clear that, after the bid in 1832, the Paulls slept on it till 1843, when, after the former owner had paid the taxes and costs, they appeared to pay their bid to the treasurer, with full knowledge that the tract had been redeemed. In principle this case is like the contest between Donnel *v.* Bellas, 10 *Barr* 347. Our law requires reasonable vigilance from bidders at treasurer's sales, and I think the same vigilance should be extended to bidders at commissioners' sales, where the land has been purchased in by the commissioners for the benefit of the county. The 3d section of the act of March 13th, 1815, makes it the duty of the purchaser, as soon as the deed is tendered by the treasurer, to pay down the money: *Dunlop*, 2d ed. 323. But this was found inconvenient. Purchasers could not be always found, and when found, were sometimes unable or unwilling to pay. Hence the act of March 13th, 1817, 6 *Smith's Laws*, 426, *Dunlop*, 333, makes it the duty of the purchaser or purchasers at treasurer's sales, as soon as the property is struck down, to pay the amount of the purchase money, or such part thereof as is necessary to pay the taxes and costs, as also one dollar for the use of the prothonotary for entering the acknowledgment of the deed. In case it is not forthwith paid, the sale may be avoided, and the property immediately set up by the treasurer. I am unable to devise any reason why the same principle should not be applied to sales made by the commissioners. The sales are cash sales. The object is to raise money for the county. The commissioners ought to exercise their judgment, and where they have no confidence in the ability of the bidder to pay, and he omits to pay, as faithful public servants, they ought to put up the tracts and sell again. Here the bidder never appears. It is true, he is dead. After the original owner has redeemed, payment of the bid is then offered, and improperly received by the treasurer. Steiner *v.* Coxe, 4 *Barr* 13, legalizes the redemption to which I refer.

The judgment is affirmed.